855 P.2d 1054

**DONA ANA SAVINGS AND LOAN ASSOCIATION, F.A., a federally chartered savings and loan association, Plaintiff–Appellant,**

v.

**James DOFFLEMEYER, a single man, et al., Defendants–Appellees.**

**No. 20561.**

Supreme Court of New Mexico.

June 22, 1993.

Miller, Stratvert, Torgerson & Schlenker, Joel T. Newton, Las Cruces, for plaintiff-appellant.

Lloyd O. Bates, Jr. Law Firm, Kyle W. Gesswein, Las Cruces, for defendants-appellees.

## OPINION

FROST, Justice.

This matter comes before us on appeal from an order granting summary judgment in favor of the defendants/appellees and against the plaintiff/appellant Dona Ana Savings & Loan Association ("DASL"). DASL held deficiency judgments against James Dofflemeyer, and it attempted to execute on the judgments by garnishing his funds in two annuities. In the district court, Dofflemeyer claimed that the annuity funds were exempt from attachment under NMSA 1978, Sections 42–10–2 and –3 (Cum.Supp.1992). The district court found that the funds were exempt and dismissed DASL's writ of garnishment. DASL appeals, and we reverse and remand with instructions.

## FACTS

In the return of DASL's initial writ of execution, Dofflemeyer attached a Claim of Exemptions form listing a certificate of deposit in the amount of $54,000.00. Before DASL could garnish this asset, however, Dofflemeyer liquidated it and used the proceeds to purchase one of his two annuities. In addition, he sold certain real estate to his sister and used the proceeds to purchase the other annuity. The record shows that Dofflemeyer purchased the annuities in contemplation of bankruptcy and in furtherance of his need for an immediate source of monthly income. He listed his sister, who was also his business partner, as beneficiary under both annuities.

## ISSUES

While he expressed concern about whether Dofflemeyer's claim of exemption on the annuities was legitimate, the trial judge found that the clear language and plain meaning of the statutes compelled him to allow the exemptions and to dismiss DASL's writ of garnishment with regard to the two annuities. On appeal, DASL claims that the annuities are not exempt from garnishment under Sections 42–10–2 and –3. DASL argues that the district court erred by not going beyond the face of the statutes to construe their purpose. A strict or literal reading of the statute, according to DASL, defeats the intended object of the legislation and operates an injustice. DASL claims that going beyond a cursory review of the statute, it is apparent that the statutes do not allow a debtor to shield funds from creditors on the eve of execution.

Dofflemeyer, on the other hand, claims that he simply was providing himself with retirement funds as a self-employed person, which is proper under the statutes. According to Dofflemeyer, the statutes clearly provide exemptions for annuities and retirement funds, and thus it is unnecessary to look beyond the plain meaning of the statute.

In addition to the annuities, DASL notes that it filed a writ of garnishment against monies owed to Dofflemeyer by a third party to which he also claimed exemption. While pointing this out, however, DASL does not allege any error in this claimed exemption, nor does it request any relief as to this claim by Dofflemeyer. In addition, the district court did not address this issue in its decision to allow the exemptions. Accordingly, we will consider only the issue of whether the annuity funds are exempt under Sections 42–10–2 and –3.

## DISCUSSION

Section 42–10–2 states that:

any interest in or proceeds from a pension or retirement fund of every person supporting only himself is exempt from ... attachment, execution or foreclosure by a judgment creditor.

NMSA 1978, § 42–10–2 (Cum.Supp.1992). Section 42–10–3 states:

The cash surrender value of any life insurance policy, the withdrawal value of any optional settlement, annuity contract or deposit with any life insurance company, all weekly, monthly, quarterly, semi-annual or annual annuities, indemnities or payments of every kind from any life, accident or health insurance policy, annuity contract or deposit heretofore or hereafter issued upon the life of a citizen or resident of the state of New Mexico, or made by any such insurance company with such citizen, upon whatever form and whether the insured or the person protected thereby has the right to change the beneficiary therein or not, shall in no case be liable to attachment, garnishment or legal process in favor of any creditor of the person whose life is so insured or who is protected by said contract, or who receives or is to receive the benefit thereof, nor shall it be subject in any other manner to the debts of the person whose life is so insured, or who is protected by said contract or who receives or is to receive the benefit thereof, unless such policy, contract or deposit be taken out, made or assigned in writing for the benefit of such creditor.

Section 42–10–3. In this case, DASL claims that Dofflemeyer essentially transmuted one form of nonexempt funds into another form of nonexempt funds, or that he fraudulently converted nonexempt funds into exempt funds. Dofflemeyer asserts that the district court found that there was no evidence of abuse or fraud on his part and that the plain meaning of the statutes allows for the exemptions.

In interpreting a statute, a court not only looks to the plain meaning of the language employed, but also to the object of the legislation. See *Miller v. New Mexico Dep't of Transp.*, 106 N.M. 253, 254, 741 P.2d 1374, 1375 (1987); see also *D'Avignon v. Graham*, 113 N.M. 129, 131, 823 P.2d 929, 931 (Ct.App.1991) (noting that formalistic and mechanistic interpretations of statutes have been rejected). Our interpretation of statutes must be consistent with

legislative intent, and our construction must not render a statute's application absurd, unreasonable, or unjust. *City of Las Cruces v. Garcia,* 102 N.M. 25, 26–27, 690 P.2d 1019, 1020–21 (1984).

■ We hold that the object of the exemption statutes quoted above is to allow for exemptions in certain funds, but that it does not allow a debtor to find shelter in these statutes by perpetrating a fraud upon his or her creditors. On their face, the statutes allow for unlimited exemptions for life insurance, annuities, and pension and retirement funds. At least one judge, however, has noted the potential for abuse of the legitimate exemptions under the statutes. *See In re Zouhar,* 10 B.R. 154, 157 (Bankr.D.N.M.1981). The legislature did not intend "that these generous provisions should be prostituted to the encouragement of extravagance, and the evasion of just indebtedness...." *New Mexico Nat'l Bank v. Brooks,* 9 N.M. 113, 129, 49 P. 947, 952 (1897). We believe, and the record shows, that DASL presented evidence that demonstrates the possibility of abuse and which at least escapes dismissal on summary judgment. *See* SCRA 1986, 1–056 (Repl.Pamp.1992); *Koenig v. Perez,* 104 N.M. 664, 665, 726 P.2d 341, 342 (1986) (summary judgment is proper only if there is no genuine issue of material fact and moving party is entitled to judgment as a matter of law).

■ To determine whether a debtor fraudulently converted nonexempt assets into exempt assets, we turn to the Uniform Fraudulent Transfer Act. *See* NMSA 1978, §§ 56–10–14 to –25 (Cum.Supp.1992). The Uniform Fraudulent Transfer Act is a revision of the Uniform Fraudulent Conveyance Act[1] with "conveyance" being replaced with "transfer" in recognition of the Act's applicability to transfers of personal property as well as real property. *See* 7A *Uniform Laws Ann.,* Business & Financial Laws at 640 (1985) ("ULA"). Sections 56–10–18 and –19 of our Uniform Fraudulent

Transfer Act[2] are essentially a recodification of Sections 56–10–7 and –4 of our Uniform Fraudulent Conveyance Act, which voided transfers made as a result of either constructive or actual fraud. *See Western Prod. Credit Ass'n v. Kear,* 104 N.M. 494, 495, 723 P.2d 965, 966 (1986) (construing Uniform Fraudulent Conveyance Act); *First Nat'l Bank in Albuquerque v. Abraham,* 97 N.M. 288, 292, 639 P.2d 575, 579 (1982) (same). Accordingly, the noninclusive enumeration of factors contained in Sections 56–10–18 and –19 are to be considered when determining whether the funds that ordinarily would be exempt from attachment under Sections 42–10–2 and –3 should be set aside as the result of a voidable transfer.

■ Our statutes were not meant to be construed in isolation, but in conjunction with the general body of the law as a whole. *Reese v. Dempsey,* 48 N.M. 417, 423, 152 P.2d 157, 161 (1944). The fact that different statutes are found in different parts of our New Mexico Statutes Annotated does not mean that they cannot or should not be construed together. When two statutes can be construed together to preserve the purposes to be obtained by both, they should be so construed as long as no contradiction would result. *State ex rel. State Park & Recreation Comm'n v. New Mexico State Auth.,* 76 N.M. 1, 29, 411 P.2d 984, 1004 (1966). We believe that the Uniform Fraudulent Transfer Act and the exemption statutes should be construed together to obtain the purposes of both.

■ Dofflemeyer's purchase of the annuities when his creditors were in "hot pursuit," his apparent admission to his broker that the purchase was a preliminary step into bankruptcy, and his request for an immediate source of income from his threatened nonexempt funds all raise a genuine issue of material fact as to whether his conversion of nonexempt funds, which were in imminent danger of attachment, was done with the intent to defraud

---

**1.** *See* NMSA §§ 56–10–1 to –13 (Repl.Pamp.1986) (the old Uniform Fraudulent Conveyance Act).

**2.** Sections 4 and 5 of the Uniform Act were codified as Sections 56–10–18 and –19 in our Code. *See* ULA at 652–58.

DASL. On the other hand, it may very well be true that Dofflemeyer legitimately sought a source for retirement funds or life insurance. In any event, it is our holding today that the conversion of nonexempt funds into funds that are ordinarily exempt under Sections 42–10–2 and –3 are not automatically protected from attachment by creditors without an analysis of whether the transfer served the underlying purpose of the exemption statutes and was not in furtherance of an intent to defraud creditors.

DASL makes two additional arguments against Dofflemeyer's claim of exemption. First, DASL claims that Dofflemeyer created what amounts to a self-settled spendthrift trust, which is contrary to the common law governing trusts. As noted above, however, the legislature provided for virtually unlimited exemptions for funds qualifying under Sections 42–10–2 and –3. We decline to incorporate the common law on trusts into the exemption statutes as that would effectively amount to rewriting the statutes, thus usurping the legislature's function. "Courts will not add words except where necessary to make the statute conform to the obvious intent of the legislature, or to prevent its being absurd." *State v. Nance*, 77 N.M. 39, 46, 419 P.2d 242, 247 (1966), *cert. denied*, 386 U.S. 1039, 87 S.Ct. 1495, 18 L.Ed.2d 605 (1967); *see also State ex rel. Barela v. Board of Educ.*, 80 N.M. 220, 222, 453 P.2d 583, 585 (1969) (courts not permitted to read into statute language that is not there, especially when statute makes sense as written).

▮ Second, DASL claims that the exemptions fail because Dofflemeyer's annuities did not originate from a recognized retirement or pension fund. DASL asserts that only an "interest in or proceeds from a pension or retirement fund ... is exempt from ... attachment, execution or foreclosure by a judgment creditor." Section 42–10–2. Simply calling the annuities "retirement funds," DASL argues, does not entitle them to protection under the exemption statutes. We do not adopt DASL's restrictive view that Dofflemeyer's annuity funds must originate from some designated employment-related retirement or pension fund to qualify for exemption under Section 42–10–2.

## CONCLUSION

▮ A debtor may buy annuities and claim that they are exempt, but a debtor may not claim an exemption that is a result of fraud and thus avoid creditors' claims by using Sections 42–10–2 and –3 as a guise or ruse. To hold that a debtor automatically may find refuge in these statutes on the eve of execution would render the statutes' application absurd, unreasonable, and unjust. We emphasize, however, that the purposeful conversion of nonexempt funds into exempt funds immediately prior to bankruptcy or threatened execution by a creditor is not fraudulent *per se;* it is only one indicium of fraud and does not necessarily by itself make out a claim of fraudulent conversion. *See Zouhar*, 10 B.R. at 156. To defeat the exemptions under the statutes here, there must be a showing of an intent to defraud creditors and that showing must be consistent with the provisions of the Uniform Fraudulent Transfer Act.

We conclude that the district court's interpretation of the exemption statutes is consistent with their plain meaning, but that a genuine issue of material fact exists as to whether Dofflemeyer engaged in acts of fraudulent conversion under the Uniform Fraudulent Transfer Act. Accordingly, we reverse the summary judgment and remand this case to the district court for a determination consistent with this opinion of whether Dofflemeyer fraudulently converted his annuity funds from nonexempt to exempt status.

**IT IS SO ORDERED.**

BACA, MONTGOMERY and FRANCHINI, JJ., concur.

RANSOM, C.J., dissenting.

RANSOM, Chief Justice (dissenting).

I respectfully dissent. Upon careful study of Dona Ana's briefs and exhibits supporting the allegation of Dofflemeyer's intent to defraud, I fail to find sufficient

evidence to raise a genuine issue of material fact. Clearly, in anticipation of Dona Ana's attempt to attach the nonexempt funds, Dofflemeyer simply transferred assets into exempt annuities for no purpose other than retirement. *In re Mueller*, 71 B.R. 165 (D.Kan.1987), *aff'd*, 867 F.2d 568 (10th Cir.1989), is instructive as to whether such a transfer of assets was fraudulent as to Dona Ana. There, the court alluded to the common-law judicial exemption (developed before the bankruptcy act) that was applied whenever a creditor challenged a transfer as a fraudulent conveyance. The exception arose only for a creditor who had a "peculiar equity" in the assets converted to exempt property. "Peculiar equities" exist either when converted funds are fraudulently procured from the creditor or when the creditor has a lien on the assets used to procure the exempt property. *Id.* at 167. Dona Ana has provided no evidence that the funds were fraudulently procured or that the annuities were procured directly or indirectly by the sale of property on which it held a lien.

It is now true that *any* creditor may challenge a transfer of assets under the Fraudulent Transfer Act, but in determining intent to defraud, consideration must be given to the status of the creditor seeking to challenge the transfer. If the creditor does not have a peculiar equity or the transferor does not have an ulterior fraudulent purpose, more is required than just the fact that the debtor acquired exempt retirement annuities in anticipation of a lien. *See, e.g., In re Reed*, 700 F.2d 986, 991 (5th Cir.1983) (noting that converting nonexempt assets into exempt assets is frequently motivated by the intent to put those assets beyond the reach of the creditors (which is the function of an exemption) and giving as an example of actual intent to defraud, a debtor who on the eve of bankruptcy borrows money that he then immediately converts into exempt assets); *In re Barash*, 69 B.R. 231 (Bankr.D.Kan. 1986) (holding that because none of the nonexempt assets used to reduce exempt homestead mortgage were obtained with funds procured from or secured to a creditor and no other extrinsic evidence was shown of actual intent to defraud, transfer was not fraudulent even though made just prior to filing of bankruptcy). *But see In re Schwingle*, 15 B.R. 291 (W.D.Wis.1981) (holding that actual intent to place property beyond reach of creditors is fraudulent).

The trial court already has made several uncontroverted findings that support Dofflemeyer's claim that his transfer of nonexempt assets into exempt retirement annuities was legitimate and with the intent to provide for his retirement rather than for some ulterior purpose:

5. Defendant Dofflemeyer is 77 years old and retired.

6. Dofflemeyer was self-employed and put aside for his retirement the funds that Dona Ana seeks to garnish.

7. Dofflemeyer derives his income from Social Security and the annuities that Dona Ana seeks to garnish.

8. Dofflemeyer's Social Security income is $700 per month and is not sufficient to pay his medical expenses, taxes, auto expenses, food, clothing and utility expenses.

9. Dofflemeyer receives $710 per month from the annuities that Dona Ana seeks to garnish.

10. Without the income from the retirement fund/annuities, Dofflemeyer would lack the resources to continue his independent living existence.

11. Without the income from the retirement fund/annuities, Dofflemeyer would either be forced on the public dole or would increase the likelihood of his becoming a public charge.

The Legislature has expressed clearly its intent to protect the retirement income of individuals. This Court has long held that exemption statutes are to be liberally construed in favor of the debtor. *See In re Spitz Bros.*, 8 N.M. 622, 635, 45 P. 1122, 1125 (1896). Like the homestead exemption statute, the retirement exemption statute "was adopted as a humane policy to prevent families from becoming destitute as the result of misfortune through common debts which generally are unforeseen." *See Hewatt v. Clark*, 44 N.M. 453,

457, 103 P.2d 646, 649 (1940). "By permitting the debtor to keep those assets necessary for his economic survival, state exemption laws fulfill important social policies which must be balanced against the need for creditor protection." Alan N. Resnick, *Prudent Planning or Fraudulent Transfer? The Use of Nonexempt Assets to Purchase or Improve Exempt Property on the Eve of Bankruptcy*, 31 Rutgers L.Rev. 615, 615 (1978). "[I]t is consistent to permit the debtor to ... purchase new exempt property on the eve of bankruptcy, so long as the items ... purchased will at least partially relieve the debtor of the need for governmental assistance." *Id.* at 627.

The trial court had before it evidence that Dofflemeyer's intent in transferring his assets from certificates of deposit to retirement annuities was to provide retirement income in order to pay for necessities. There was no extrinsic evidence that Dofflemeyer's intent was to defraud his creditors. "Fraud can never be predicated on an act which the law permits." *In re Tveten*, 402 N.W.2d 551, 553 (Minn.1987). Therefore, I would affirm the trial court.