This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**NORMAN L. MARTINEZ,**

Petitioner-Appellant,

**v.** No. 31,790

**BEATRICE R. VIGIL-MARTINEZ,**

Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY**
**Glenn T. Ellington, District Judge**

Familia Legal Services
Lorenzo E. Atencio
Española, NM

for Appellant

William Ivry
Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**SUTIN, Judge.**

{1}   Norman Martinez (Husband) appeals from the district court's amended order that divided Husband's retirement benefits between Husband and his former wife, Beatrice Vigil-Martinez (Wife). The court's order constituted the enforcement of a lien against Husband's retirement account that was granted as security for a money judgment owed by Husband to Wife as ordered in a final decree of the couple's divorce. After Husband and Wife were divorced, Husband's debts were discharged in bankruptcy court, however, Wife was listed as a creditor holding a secured claim. We affirm.

**BACKGROUND**

{2}   In April 2001, Husband filed for a divorce from Wife. On August 26, 2002, the district court entered a final decree of divorce (the divorce decree). Among other provisions in the divorce decree, the district court ordered that "[e]ach of the parties is awarded their respective retirement[] accounts as their sole and separate property." The district court also ordered that Wife was granted a

> judgment against [Husband] for the sum of $7,973.77 which represents [Wife's] one-half interest in the sale of community real estate, together with interest thereon at the rate of six . . . percent per annum from 29 November 2000, the date said sum was deposited in [Husband's] bank account . . . to the date of this decree, and from the date of entry of this decree said sum shall bear interest at the rate of ten . . . [percent] per annum until paid in full. These provisions effect a lien upon [Husband's] retirement account . . . for the reason that the underlying transaction and sale of said real estate was accomplished surreptitiously by [Husband], and the evidence adduced at the trial of this case

2

established by clear and convincing evidence that [Husband] used [Wife's] community funds derived from said sale to purchase or repurchase retirement funds as aforesaid for himself.

**{3}** On February 19, 2003, Husband filed for bankruptcy. Husband listed Wife among the "creditors holding secured claims." Husband stated that the value of Wife's secured claim was $9,000, and that the value of the security—his retirement account—was $34,000. On May 19, 2003, the United States Bankruptcy Court for the District of New Mexico granted Husband a discharge of his debt. Accompanying the discharge order was an "Explanation of Bankruptcy Discharge in a Chapter 7 Case." In pertinent part, the explanation stated that creditors were prohibited from attempting to collect a debt that had been discharged, "[h]owever, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case." Nothing in the record indicates that Wife's lien on Husband's retirement account was "avoided or eliminated in the bankruptcy case."

**{4}** In 2008, Wife knew that Husband was nearing retirement from his employment with the State of New Mexico. Thus, in an effort to enforce her lien against Husband's retirement account, Wife prepared an order dividing retirement benefits. On June 23, 2008, the district court entered an order dividing retirement benefits that had been submitted to the district court by Wife, acting pro se. Husband was not

3

given notice of the order. By the June 2008 order, the district court ordered that Husband's Public Employees Retirement Association (PERA) monthly retirement benefit payments would be divided between Husband and Wife, with Wife to receive a set monthly sum until Husband's debt to Wife was paid in full, pursuant to the divorce decree. The order was rejected by PERA because it did not meet PERA's requirements. Thereafter, Wife secured counsel to act on her behalf in this matter. Wife's counsel requested that the court enter an amended order dividing the PERA retirement benefits in April 2009, a copy of which was delivered to Husband's counsel, who filed a response on Husband's behalf in May 2009.

{5} In August 2009, Husband filed a claim of exemption. The claim of exemption purported to exempt "from collection by creditors any and all interest in or proceeds from a pension or retirement fund pursuant to [NMSA 1978, Section 42-10-2 (1983)]." The claim did not reference the divorce decree, nor did it directly reference Wife's lien against Husband's retirement account.

{6} Upon the district court's request, each party submitted memoranda of law in support of their respective positions as to whether Wife could enforce her lien against Husband's PERA retirement account pursuant to the divorce decree. The parties also submitted proposed findings of fact and conclusions of law. On October 31, 2011, the district court entered an amended order dividing the PERA retirement benefits in

4

which it ordered that Wife would receive fifty percent of Husband's monthly gross pension benefit payments until such time as the payments to Wife amounted to a total sum of $21,173.80, thus giving effect to Wife's lien on Husband's retirement account. The sum of $21,173.80 represented the principal amount of Husband's debt to Wife, $7,973.77, plus interest in the amount of $13,200.03, as calculated according to the dictates of the divorce decree. Husband appeals from the court's October 2011 order.

{7}     On appeal, Husband argues that the district court lacked jurisdiction to secure Husband's debt to Wife by a lien against Husband's retirement account, which he claims was exempt from Wife's claim as a creditor. Husband also argues that in 2008 the district court lacked jurisdiction to modify the divorce decree and that he was deprived of due process by the court's 2008 order. Finally, Husband argues that his debt to Wife was discharged in the bankruptcy proceeding, and therefore, the debt could not be collected by Wife. We are not persuaded by Husband's arguments. Accordingly, we affirm.

**DISCUSSION**

**Standard of Review**

{8}     "Whether the district court is possessed of jurisdiction over the subject matter of a case is a question of law that we review de novo." *Ottino v. Ottino*, 2001-NMCA-012, ¶ 6, 130 N.M. 168, 21 P.3d 37. Also, "questions of constitutional law

and constitutional rights, such as due process protections, [are reviewed] de novo." *Los Chavez Cmty. Ass'n v. Valencia Cnty.*, 2012-NMCA-044, ¶ 12, 277 P.3d 475 (internal quotation marks and citation omitted). Finally, we also review, de novo, the legal question whether the court erred in enforcing Wife's lien against Husband's retirement account. *See Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582 (stating that legal questions are reviewed de novo).

**Husband Did Not Timely Appeal From the Divorce Decree**

{9}     Husband argues that the district court lacked subject matter jurisdiction, or otherwise acted outside of its authority, when, in the divorce decree, the court ordered that Husband's debt to Wife would be secured by a lien on Husband's retirement account in the amount of the debt plus interest. Husband's claim is primarily grounded in Section 42-10-2. In sum, Husband argues that the district court erred in securing Husband's debt to Wife with a lien against his retirement account because, pursuant to Section 42-10-2, his retirement account was exempt from Wife's claim as a creditor.

{10}     Section 42-10-2 provides, in pertinent part, that "any interest in or proceeds from a pension or retirement fund of every person supporting only himself is exempt from receivers or trustees in bankruptcy or other insolvency proceedings, executors or administrators in probate, fines, attachment, execution[,] or foreclosure by a

6

judgment creditor." Our Supreme Court has held that the legislative intent behind the enactment of Section 42-10-2 was "to allow for exemptions in certain funds, but that it does not allow a debtor to find shelter in [the exemption provision] by perpetrating a fraud upon his or her creditors." *Doña Ana Sav. & Loan Ass'n v. Dofflemeyer*, 115 N.M. 590, 593, 855 P.2d 1054, 1057 (1993). Further, "the conversion of nonexempt funds into funds that are ordinarily exempt under Section[] 42-10-2 . . . are not automatically protected from attachment by creditors without an analysis of whether the transfer served the underlying purpose of the exemption statute[] and was not in furtherance of an intent to defraud creditors." *Doña Ana Sav. & Loan*, 115 N.M. at 594, 855 P.2d at 1058. Thus, the question whether assets that are "exempt" under Section 42-10-2 may nevertheless be subject to the claims of creditors turns on "whether a debtor fraudulently converted nonexempt assets into exempt assets[.]" *Doña Ana Sav. & Loan*, 115 N.M. at 593, 855 P.2d at 1057.

{11} Husband claims that the district court's finding, in 2002, that he "surreptitiously" converted community funds into his personal retirement account, did not amount to a finding of fraud, as contemplated by the Supreme Court in *Dofflemeyer*. Therefore, according to Husband, based on the exempt status of his retirement account, the court was not permitted to secure his debt to Wife with a lien

against his retirement account. We interpret Husband's claim to be an attempt to void, for legal error, the lien provision of the divorce decree.

{12}    As indicated in the background section of this Opinion, the divorce decree was filed on August 26, 2002. Husband altogether fails to explain why, if he believed the lien provision or any other aspect of the divorce decree to have been contrary to law, he did not file a timely appeal therefrom thirty days after it was entered. *See* Rule 12-201(A)(2) NMRA (providing that appeals shall be filed "within thirty . . . days after the judgment or order appealed from is filed in the district court clerk's office"). Owing to Husband's failure, until he filed the present appeal on July 16, 2012—nearly ten years after the entry of the divorce decree—to raise any claim of error as to that decree, we will not consider his claim that the court erred in securing his debt to Wife by giving effect to a lien on his retirement account. *See Govich v. N. Am. Sys., Inc.*, 112 N.M. 226, 230, 814 P.2d 94, 98 (1991) (holding that the timely filing of a notice of appeal is a mandatory precondition to our exercise of jurisdiction). Husband does not cite any authority that would permit him, at this late date, to attack the court's alleged legal errors contained in the divorce decree. In sum, we reject Husband's argument regarding alleged errors in the divorce decree.

**The District Court Did Not Modify the Divorce Decree**

{13} Husband argues that, pursuant to NMSA 1978, Section 39-1-1 (1917), the district court lost jurisdiction over the divorce decree in September 2002, thirty days after it was filed, and therefore, the court did not have jurisdiction in 2008 to modify its judgment. Husband shows that the divorce decree awarded Husband and Wife their respective retirement accounts as their sole and separate property. The premise underlying his jurisdiction argument is that in June 2008, and again in October 2011, the district court modified its judgment to reflect a redistribution of his retirement benefits, by instructing PERA to give one-half of Husband's monthly retirement benefit payments to Wife until the amount of his debt to her was satisfied. Husband's premise is faulty, and his modification argument overlooks key aspects of the record.

{14} First, although the record reflects that the district court, in the divorce decree, awarded Husband and Wife "their respective retirement[] accounts as their sole and separate property" the court also, indisputably, granted Wife a lien against Husband's retirement account. Second, the record does not support Husband's argument that the district court modified the divorce decree either in 2008 or in 2011. Rather, the record demonstrates that in 2008 the district court was only acting to protect and enforce Wife's lien. The court attempted to do so with its order instructing PERA—albeit ineffectively—to make monthly payments from Husband's retirement account to Wife until the amount owed, pursuant to the divorce decree, was paid in full. The court's

2011 amended order also reflected the district court's intent not to modify the divorce decree, but to enforce Wife's lien against Husband's retirement account. Once Husband's debt to Wife is satisfied, the court's order provides that the funds remaining in Husband's retirement account belong solely to Husband.

{15}     Thus, rather than modifying the terms of the divorce decree, the court's 2011 order effectively did what the 2008 order attempted to do, that is, the order enforced the terms of the divorce decree by designating half of Husband's monthly retirement benefit payments to Wife until her lien was satisfied. Because the court retained its jurisdiction to enforce the divorce decree for as long as its terms remained in force, the court had jurisdiction, at all times relevant to this appeal, to enforce Wife's lien against Husband's retirement account. *See Mendoza v. Mendoza*, 103 N.M. 327, 333, 706 P.2d 869, 875 (Ct. App. 1985) ("As long as a judgment remains in force, the trial court which rendered the judgment retains the authority to enforce its judgment where the court has originally acquired jurisdiction.").

{16}     We note that Husband argues that "[t]his case is like *Ruybalid v. Segura*[, 107 N.M. 660, 763 P.2d 369 (Ct. App. 1988).]" The facts in *Ruybalid* are significantly different from those in the case before us. Husband does not develop any argument as to the manner in which *Ruybalid* is analogous to or should control the outcome in this case. In our view, *Ruybalid* is not analogous and does not control the outcome

of this case, nor does it serve as persuasive authority for Husband's arguments. In sum, Husband's argument that the court lacked jurisdiction to modify the divorce decree does not provide a basis for reversal.

**Husband's Due Process Argument**

{17}    Husband argues that the district court's 2008 order dividing retirement benefits "effectively deprive[d him] of a substantial portion of his PERA benefits." He further argues that the order "effectively seiz[ed his] property to satisfy [the] judgment without complying with the procedures for execution of a judgment set forth in Rule 1-065.1 [NMRA]." In addition, he argues that the order was "not signed by Husband or his counsel." And he argues further that there was "no hearing or post[-]judgment motion prior to [its] entry[.]" Yet Husband acknowledges that the 2008 order was rejected by PERA. Husband's argument contradicts itself.

{18}    "Constitutional due process clearly requires that before [a debtor] is finally deprived of his property, a hearing must be provided on the relevant issues, including his default, the existence of a lien, and the extent of his interest in the property." *Gonzalez v. Gonzalez*, 103 N.M. 157, 163, 703 P.2d 934, 940 (Ct. App. 1985). Thus, had the 2008 order led to an actual deprivation of Husband's property, his due process claim might warrant reversal on appeal. Importantly, Husband does not argue that his due process rights were violated by the district court's 2011 amended order dividing

11

the PERA retirement benefits, nor does Husband attempt to show that the alleged due process violation in 2008 somehow also affected his due process rights in 2011. Under the circumstances of this case, where the 2008 order was rejected by PERA, and it did not lead to a deprivation of Husband's property, his due process argument is unavailing.

**Husband's Argument That His Debt to Wife Was Discharged by the Bankruptcy Court**

{**19**}     Husband argues that his "debt to Wife was discharged in [b]ankruptcy [c]ourt on [May] 19, 2003[,] in its entirety, including any accrued interest on the balance." In support of his argument, Husband relies on *Mares v. Schuth*, 38 N.M. 101, 104-05, 28 P.2d 527, 529 (1933), for the proposition stated in that case that "[a] garnishment judgment is only for the purpose of enforcing the payment of the main judgment, and if there be no main judgment to enforce because of its annulment, then the purpose and life of the judgment against the garnishee is ended." (Internal quotation marks and citation omitted.) *Mares* did not consider any bankruptcy-related collection issue, and it does not bear any factual resemblance to this case; accordingly, *Mares* does not stand as authority for Husband's argument.

{**20**}     Additionally, Husband, relying generally on *Jacob v. Spurlin*, 1999-NMCA-049, 127 N.M. 127, 978 P.2d 334, argues for the first time in his reply brief that "[t]he case law is clear that the state court is subject to a federal restraining order to enforce

12

the discharge." Yet Husband fails to provide an explanation or an argument to demonstrate why this case and his argument were not raised in his brief in chief, and he fails to show how that proposition applies to the facts of this case. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what [a party's] arguments might be."); *see also Wilcox v. N.M. Bd. of Acupuncture & Oriental Med.*, 2012-NMCA-106, ¶ 15, 288 P.3d 902 (declining to consider an argument raised for the first time in a reply brief). Further, Husband fails to cite any law or evidence in the record to suggest that a federal restraining order exists in this case that effectively forbade the district court from executing Wife's lien on his retirement account. *See Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104 ("We will not search the record for facts, arguments, and rulings in order to support generalized arguments."). In sum, Husband's arguments are unpersuasive.

{21} Husband's debt to Wife was listed as a secured claim in Husband's bankruptcy case. Husband does not dispute Wife's argument that the lien that secured that debt survived Husband's discharge in bankruptcy. *See Delta Automatic Sys., Inc. v. Bingham*, 1999-NMCA-029, ¶ 31, 126 N.M. 717, 974 P.2d 1174 (explaining that failure to respond, in a reply brief, to arguments raised in an answer brief constitutes a concession of the matter). Moreover, Husband stated in a memorandum of law filed

13

in the district court that his "money debt was discharged but [Wife's] lien on [Husband's] separate retirement funds survived the bankruptcy." Thus, Husband has conceded that Wife's lien survived bankruptcy. In sum, we see no basis on which to hold that the district court was prohibited by the bankruptcy proceedings from giving effect to Wife's lien.

**CONCLUSION**

{22}     We affirm.

{23}     **IT IS SO ORDERED.**


_____
                                    **JONATHAN B. SUTIN, Judge**


**WE CONCUR:**


_____
**RODERICK T. KENNEDY, Chief Judge**


_____
**LINDA M. VANZI, Judge**