568 A.2d 286

**PFIZER, INC. and PMA Insurance Company, Petitioners,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (Ronald S. GRESHAM (Dec'd) and Nancy J. Gresham (Widow)), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 20, 1989.

Decided Dec. 28, 1989.

Charles E. Wasilefski, with him, Michael R. Bonshock, Peters & Wasilefski, Harrisburg, for petitioners.

Robert S. Mirin, Mirin & Jacobson, P.C., Harrisburg, for respondent/claimant.

Before DOYLE and McGINLEY, JJ., and BARBIERI, Senior Judge.

McGINLEY, Judge.

Pfizer, Inc. (Employer) and PMA Insurance Company (PMA) appeal an order of the Workmen's Compensation Appeal Board (Board) affirming a referee's decision to grant the fatal claim petition of Nancy Gresham (Claimant). We affirm.

On August 10, 1984, Claimant's husband, Ronald S. Gresham (Decedent), was employed by Pfizer as a full-time district manager when he and his son were killed in a traffic accident in Delaware. Claimant filed a fatal claim petition on November 21, 1984, alleging that the Decedent suffered fatal injuries while in the course of his employment. Employer answered on December 6, 1984, alleging that the Decedent was not covered under the extraterritorial provisions of Section 305.2(a) of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411.2(a) and that the Decedent was not furthering the interests of his employer at the time of his death.

The referee made the following relevant findings of fact:
5.  .... His responsibilities included checking on stores within his Mid–Atlantic district. The decedent earned an average weekly wage of $942.31. Defendant provided

decedent with a leased car and reimbursed him for the car's business expenses. He was reimbursed for telephone charges incurred in the performance of his duties on behalf of the defendant.

6. The decedent maintained an office with business files in his home in Harrisburg. Further, the decedent made numerous business calls from his home. The decedent spent a great deal of time on the road checking stores within his district and maintained a flexible work schedule. The decedent did not usually work on Saturdays and Sundays.

7. The claimant, Nancy Gresham, testified, and I find as a fact, that she and her daughter, Karyn Lyn, were in Bethany Beach, Delaware on August 10, 1984 and that her husband and son intended to join them on August 10, 1984.

8. The decedent and his son departed Harrisburg after 7:00 a.m. on August 10, 1984. The decedent's district included the Eastern sector of Pennsylvania, Southern New Jersey, Delaware, Maryland, Washington, D.C. and West Virginia. The drive from Harrisburg, Pennsylvania to Bethany beach was approximately 3½ hours.

9. Debra Legar, an employee of Edgehill Pharmacy, in Dover, Delaware, testified and I find as fact, that the decedent and his son arrived at her store at 10:30 a.m. on August 10, 1984. He checked her store for about ½ hour and left the premises.

10. George Duncan, the decedent's supervisor, testified and I find as a fact, that decedent worked on Fridays and called him to report figures for the week. The decedent called at 11:15 a.m. on August 10, 1984 and [Duncan] was busy on another line. The decedent told him he was on the road and that he expected the decedent to call again on August 10, 1984.

11. The decedent and his son were travelling south on Route 113 in Delaware, 2.4 miles north of Georgetown at 12:15 p.m. on August 10, 1984. The decedent's son was driving, the car crossed the center line, and the car hit a

tractor trailer head on. Both Mr. Gresham and his son suffered fatal injuries.

12. Edgehill Pharmacies within Delaware are part of the decedent's district including those in Dover, Seaford, Laurel, Delmar, Lewes and Rehoboth Beach.

13. Three major routes running north-south in Delaware are U.S. Route 13 and 113 and Delaware Route 1.[1]

. . . .

1. The referee explained how he reached the two remaining findings of fact:

At this point, the circumstances surrounding the fatal accident and the intention of the parties involved are subject to some speculation more than actual fact. However, since both occupants were killed the only alternative is to reconstruct the circumstances surrounding the fatal accident. Therefore, if circumstantial evidence is based upon a solid foundation of facts, reasonable and logical inferences can be made where it is impossible to do so by other means. FROM THE ABOVE FINDINGS OF FACT We know that the decedent stopped and inspected a pharmacy in Dover, Delaware at 10:30 a.m. and left around 11:00 a.m.

We further know that the decedent always called his figures in to his supervisor on Fridays and that he called his supervisor at 11:15 a.m. and was instructed to call back later as his supervisor was busy.

We further know that the deceased was killed on Route 113 at 12:15 p.m. about 2.4 miles north of Georgetown, Delaware.

We further know that the decedent intended to meet his wife and daughter in Bethany Beach, Delaware on the day he was killed. We further know that other pharmacies within the claimant's district in Delaware were located east and west of the site of the fatal accident in Lewes, Rehoboth Beach, Seaford, Laurel and Delmar, Delaware.

The above evidence is not conjecture or speculation but based on direct, uncontradicted testimony and evidence. If the decedent was being driven to any of those pharmacies or to a telephone to call his figures in to his supervisor, Mr. Duncan, then the decedent would have been acting in a manner consistent with his employment. The inconsistency in the scenario is the route the deceased was on at the time of the accident. To reach the pharmacies in Seaford, Laurel and Delmar, the most direct route is U.S. 13 from Dover. To reach the pharmacies in Lewes or Rehoboth Beach the shortest route would be Delaware Route 1. However, since his son was driving, the decedent may have opted for U.S. Route 113 which is less congested and cuts through Ellendale State Forest, rather than permit his son to drive on four lane divided highways like Route 1 and 13. Additionally, all of the aforementioned pharmacies are accessible from the site of the accident by U.S. Route 9 or Delaware Route 18. Further, he may have deviated slightly for lunch.

Referee's Decision, December 21, 1987, at 3–4.

16. Based upon reasonable inference and logic, and considering all other findings of fact herein, I find as fact that the decedent was being driven by his son intending to continue his inspection of other pharmacies, and perhaps have lunch, and, most importantly, later call his supervisor before arriving at his ultimate destination in Bethany Beach.

17. I further find that any deviation from the above would be considered minor and not sufficient to deter claimant from furthering the interest of his employer.

Findings of Fact Nos. 5–13, 16–17, Referee's Decision, at 2–5.

The referee concluded that the Claimant had established "through competent, substantial and credible evidence that decedent was furthering the business of his employer in a manner wholly consistent with his contract of employment at the time of his fatal accident," (Conclusion of Law No. 6, Referee's Decision at 6); that "[a]s decedent's position as a district manager for the defendant required him to check on stores throughout his district, the decedent's job is properly classified as an off premises employment," (Conclusion of Law No. 3, Referee's Decision at 5); that Decedent, and therefore Claimant, is covered under Section 305.2(a) of the Act providing extraterritorial coverage for injury or death outside the Commonwealth of Pennsylvania (Conclusion of Law No. 8, Referee's Decision at 6); and that there was a reasonable basis for the contest and defense of the case by Employer's insurance carrier, PMA. (Conclusion of Law No. 9, Referee's Decision at 6.) Employer appealed and the Board, finding substantial competent evidence to support the referee's decision, affirmed.

Employer and PMA appeal, advancing the same arguments: that Decedent was not covered under the extraterritorial provisions of the Act; and that Decedent was not furthering the business of his employer in a manner consistent with his contract of employment at the time of the fatal accident. Claimant argues that the Board's decision is supported by substantial evidence and that, based upon the

information known to the petitioners at the time of the initial claim, the record reflects an unreasonable contest and an abuse of process by Employer and PMA.[2]

Our scope of review is limited to determining whether the Board committed an error of law, failed to make fact findings supported by substantial evidence, or violated constitutional rights. *Lawrence v. Workmen's Compensation Appeal Board (Commercial Lovelace Motor Freight, Inc./Banner Industries & Workers)*, 125 Pa.Commonwealth Ct. 701, 559 A.2d 67 (1989).

Section 305.2(a) of the Act provides, in pertinent part: (a) If an employe, while working outside the territorial limits of this State, suffers an injury on account of which he, or in the event of his death, his dependents, would have been entitled to the benefits provided by this act had such injury occurred within this State, such employe, or in

2. Employer and PMA argue that the unreasonable contest issue must be dismissed because Claimant failed to timely appeal this aspect of the referee's decision to the Board and that the Board was without jurisdiction to address this issue. Claimant argues that the facts should serve as a "sufficient basis *nunc pro tunc* or *sua sponte* to reverse the failure to find an unreasonable contest" on behalf of Employer and PMA. (*See* Claimant's brief to this Court at 29–30.) Although Employer appealed from the referee's decision, Claimant did not take an appeal within twenty days from any aspect of the referee's decision as required under Section 423 of the Act, 77 P.S. § 853. Claimant argues that the unreasonable contest issue was before the Board, and is before this Court, by virtue of the Employer and PMA's appeal. This Court rejected a similar argument in *Allied Chemical Company v. Workmen's Compensation Appeal Board (Witkowski)*, 115 Pa.Commonwealth Ct. 251, 539 A.2d 1386 (1988). In *Allied Chemical*, the referee awarded Claimant total disability benefits, but also awarded Claimant's employer a credit for its payments to Claimant based on acceptance of the fact that Claimant was at least partially disabled. Employer filed a timely appeal to the Board, but the Claimant appealed the referee's decision beyond the twenty day appeal period. Claimant argued that, based upon the language of Section 423, which provides that the Board may extend the appeal period "upon cause shown," the Board extended the time for appeal because it addressed the merits of the matter. Our Court held that the legislature did not intend to provide for a cross-appeal extension of time through the "cause" provision of Section 423, and that the "cause" provision has been interpreted to mean fraud or its equivalent. *Allied Chemical*, 115 Pa.Commonwealth Ct. at 256, 539 A.2d at 1388. As in *Allied Chemical*, the Board was without jurisdiction to hear Claimant's appeal, and we will not address Claimant's unreasonable contest argument on appeal to this Court, absent fraud or its equivalent.

the event of his death resulting from such injury, his dependents, shall be entitled to the benefits provided by this act, provided that at the time of such injury:

(1) His employment is principally localized in this State, or

(2) He is working under a contract of hire made in this State in employment not principally localized in any state....

The Board concluded that: "[h]aving reviewed the extensive record in its entirety, we find the facts more than adequate to support the Referee's conclusion that the Pennsylvania Workmen's Compensation Act applies to the Claimant in this case." (Opinion of the Board, March 2, 1989, at 3.) Decedent was employed as a district sales manager for the mid-Atlantic sales district of the Leeming–Pacquin Division of Pfizer. He was living in Harrisburg and maintained his work station and office and files in his home in Harrisburg, where he spent more than thirty per cent of his time managing the multistate staff of the mid-Atlantic sales division. (Notes of Testimony, February 14, 1985, (N.T.) at 9–10.) Pennsylvania taxes were deducted from Decedent's pay. Decedent's job required travel throughout the mid-Atlantic region including Eastern Pennsylvania, Southern New Jersey, Delaware, Maryland, Washington, D.C. and West Virginia. Decedent was issued a company car by the Employer, which was registered and insured in Pennsylvania. The pattern of Harrisburg office telephone usage by Decedent established that on more than sixty eight percent of the regular workdays Decedent utilized the Harrisburg business office at some time during a work day. (Claimant's Exhibits C–10—C–17, Reproduced Record (RR) at 346A—368A.) Further, Claimant testified that Decedent was hired by Employer in February of 1971, in Harrisburg, Pennsylvania and maintained his main office out of their Harrisburg home because he covered a large portion of Pennsylvania at that time. (N.T. at 9.)

■ In *Furnco Construction Corporation v. Workmen's Compensation Appeal Board (Dorogy)*, 124 Pa.

Commonwealth Ct. 17, 555 A.2d 275 (1989) this Court concluded that a referee correctly applied Section 305.2 to the facts where Dorogy was working under a contract of hire made in Pennsylvania although his employment was not located in any particular state. In *Furnco,* Dorogy entered into a contract with his employer in Monessen, Pennsylvania, where he was placed on a salary and received all his assignments from his employer. We have consistently held that a contract for hire is created wherever the acceptance of the contract occurs. *Olivieri v. Workmen's Compensation Appeal Board (I.T.T. Grinnell),* 117 Pa.Commonwealth Ct. 144, 542 A.2d 658 (1988).

In *Taylor v. Workmen's Compensation Appeal Board (Ace Installers),* 117 Pa.Commonwealth 188, 192, 543 A.2d 219, 221 (1988) this Court reversed a board's order dismissing a claim petition for lack of jurisdiction under Section 305.2(a)(2) of the Act, stating:

> The legislature in enacting Section 305.2(a)(2) realized that it would be unjust to compel an itinerant employee injured on the job in a foreign state while working out of a hotel room to return to the foreign state in order to file a claim for compensation. This is precisely the situation that Section 305.2(a)(2) of the Act was intended to rectify.

In *Taylor,* an itinerant employee, Randy Taylor, was hired in Coraopolis, Pennsylvania by a Virginia corporation to supervise the installation of furniture in hotels in Crystal City, Virginia, from February 12, 1982, until March 20, 1982. Taylor finished the job in Virginia and returned home to Pennsylvania where he was contacted by his employer to work a job in Dallas, Texas. Taylor was then sent by his employer to work a job in Miami, Florida, and then to Marco Island, Florida, where he injured his lower back moving furniture. The Court found that once Taylor was hired in Pennsylvania, he was simply kept on the payroll and shifted from job to job as needed. The Court concluded that Taylor's employment contract was established in Pennsylvania and the employment relationship never terminated and he was consistently paid until he injured his back on Marco

Island; therefore, he was covered under Section 305.2(a) of the Act.

The determination of the referee, affirmed by the Board, that Section 305.2(a) of the Act applies to the Decedent is adequately supported by the record.

Employer and PMA also contend that the Decedent was not furthering the business of his Employer in a manner consistent with his employment contract at the time of the fatal accident. It is well-settled law that a claimant must prove that his injury arose in the course of his employment and was related thereto. *Stevens v. Workmen's Compensation Appeal Board (Pennsylvania Gas and Water Company)*, 124 Pa.Commonwealth Ct. 486, 556 A.2d 522 (1989).

> This Court has repeatedly held that 'the course of employment of a traveling worker is necessarily broader than that of an ordinary employee....' Moreover, 'when an employee sets out upon the business of his employer and is later fatally injured, there is a presumption that the employee was engaged in the furtherance of his employer's business at the time of his death....' To be denied compensation, an employee must have "virtually *abandoned* the course of his employment, or ... at the time of the accident [injury], [be] *engaged in something wholly foreign thereto....*" (Citations omitted.)

*Capitol International Airways, Inc. v. Workmen's Compensation Appeal Board*, 58 Pa.Commonwealth Ct. 551, 553–554, 428 A.2d 295, 297 (1981).

The Board affirmed the referee's conclusion that Employer had failed to show that the Decedent had abandoned the course of his employment or had been engaged in something wholly foreign thereto at the time of the accident. In doing so, the Board acknowledged that "[t]he facts called for a credibility decision which the Referee properly made. The Referee must decide what testimony he believes." (Opinion of the Board at 4.) We agree. Fact-finding is solely within the referee's discretion and if

the facts as found by the referee rest on competent evidence, neither the Board nor this Court may disturb them. *Universal Cyclops Steel Corporation v. Krawczynski,* 9 Pa.Commonwealth Ct. 176, 305 A.2d 757 (1973).

■ Finally, Employer and PMA argue that because the Decedent was planning to meet his wife and daughter in Bethany Beach, Delaware, Decedent was not furthering his employment. They note that the Decedent's son was operating Decedent's company car at the time of the accident; that the Decedent was dressed in a casual fashion with a sports shirt and shorts at the time of the accident; and, that there were no documents or records pertaining to Decedent's employment that were found in the vehicle. Employer and PMA rely upon *Ginther v. J.P. Graham Transfer Co.,* 348 Pa. 60, 33 A.2d 923 (1943) and argue that Decedent abandoned his employment when he allowed his son to drive the company car. In *Ginther,* a truck driver was ordered to make a delivery but allowed a friend to drive his truck on the return trip. Our Supreme Court held that Ginther did not remain in the course of his employment for purposes of awarding workmen's compensation benefits. The Supreme Court stated:

> To say that Ginther remained in the course of his employment under the circumstances here presented would deprive the employer of the control of his business and of the person to whom he had entrusted duties concomitant with the furtherance of that business. To permit an employee entrusted with the performance of a particular duty to delegate that duty to another, when he has no authority to so delegate, and no emergency making such an arrangement necessary arises, would tend to destroy the relation of master and servant. (Footnote omitted.)

*Ginther,* 348 Pa. at 63, 33 A.2d at 924–925.

The Board concluded that *Ginther* is distinguishable. In *Ginther,* the decedent delegated the particular duty for which he was hired, truck driving. Truck driving was a duty "concomitant with the furtherance" of his employer's business, and was in fact, the essence of Ginther's employ-

ment. In the matter *sub judice*, the Decedent was a district sales manager for whom the company car was merely a means of transportation, the operation of which was not a duty "concomitant with the furtherance" of Employer's business. The Board has not erred.

Accordingly, we affirm.

## ORDER

AND NOW, this 28th day of December, 1989, the order of the Workmen's Compensation Appeal Board dated March 2, 1989, at No. A–95120, is hereby affirmed.