**Al J. OWENS, Petitioner,**

v.

**WORKERS' COMPENSATION AP-
PEAL BOARD (G.D. Leasing
of Indiana), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Jan. 5, 2001.

Decided Jan. 31, 2001.

Publication Ordered April 10, 2001.

Edward J. Abes, Pittsburgh, for petitioner.

John P. Fedorko, Pittsburgh, for respondent.

Before PELLEGRINI, Judge,
LEADBETTER, Judge and MIRARCHI,
Senior Judge.

PELLEGRINI, Judge.

Al J. Owens (Claimant) appeals from an order of the Workers' Compensation Appeal Board (Board) affirming the decision of the Workers' Compensation Judge (WCJ) dismissing his claim and reinstatement petitions for lack of jurisdiction.

Claimant sustained an injury to his right shoulder, arm and neck on December 8, 1995, in the course and scope of his employment as a truck driver with G.D. Leasing of Indiana (Employer) while working in Youngstown, Ohio. Claimant filed for and received workers' compensation benefits pursuant to the laws of the State of Indiana. Benefits were discontinued as of September 13, 1996. Claimant then filed a claim petition and a reinstatement petition in Pennsylvania on January 22, 1997, alleging that he had been injured as a result of a work-related accident and that he continued to be disabled as a result of his injuries. Employer filed a joinder petition requesting that Compass Transportation, a trucking terminal located in West Mifflin, Pennsylvania, be joined as the liable em-

ployer for Claimant's work injury because a substantial part of Claimant's work was localized there. Employer later requested a dismissal of that petition but by interlocutory order dated June 24, 1997, that request was denied. The parties then agreed to bifurcate the case to determine whether the WCJ had jurisdiction to hear the case because Claimant had been employed by an Indiana corporation and had already received benefits from the State of Indiana.

Claimant testified before the WCJ regarding his employment with Employer who was located in Indiana. He stated that he became aware of employment opportunities with Employer when he went to Compass Transportation located in West Mifflin, Pennsylvania, seeking a truck driving position. He stated that office referred him to Employer who supplied Compass with drivers, and he submitted an application to Employer at its Indiana office. Employer invited him to participate in an orientation program in Indiana which he attended beginning on May 22, 1995. He indicated that on that date, he signed a document that specified that he was not an employee of Employer until he successfully completed the orientation program, and upon successful completion, he would be hired.[1] The document further stated that if he was injured, his exclusive remedy for workers' compensation would be in the State of Indiana, but it did not say that his employment was principally located in that state or any other state.

Claimant continued to state that after taking a written test, a driving test, a physical and performing other various jobs that he would be required to perform as an over-the road truck driver, the program concluded on May 25, 1995, and he was hired to work for Employer. He stated that he signed an employment contract with Employer in Indiana on that date and was assigned to Employer's closest terminal to his residence which was the West Mifflin terminal operating under the name of Compass Transportation. Claimant

---

1. The document that Claimant signed stated the following:

**RE: EMPLOYMENT WITH G.D. LEASING OF INDIANA, INC. DATE: May 22, 1995**

Dear Al J. Owens

Congratulations! G.D. Leasing of Indiana, Inc. has reviewed your employment application and as a result of that review, you will be enrolled in our Employee Orientation Program beginning May 22, 1995.

Your orientation will begin with our formal classroom training program in Gary, Indiana. You will *not* be an employee during this period and will receive no wage during the classroom training. At the satisfactory completion of this orientation period, you will commence employment with G.D. Leasing of Indiana, Inc., in Gary, Indiana. You will then be assigned an employee number and begin your apprentice period at a special apprentice compensation.

Upon the satisfactory completion of the entire program, you will then be entitled to the compensation and benefits with G.D. Leasing of Indian, Inc. as set forth in the driver handbook. The employment relationship created between you and G.D. Leasing of Indiana, Inc. is "at will" in that either party may terminate the employment relationship at any time for any reason. Inasmuch as your employment is considered to be entered into at the conclusion of the orientation period when you report at the home office in the State of Indiana, any legal issues arising out of the employment relationship will be governed by the laws of Indiana. Therefore, the exclusive remedy for Workers' Compensation shall be the State of Indiana.

We look forward to a long and mutually rewarding relationship between you and G.D. Leasing of Indiana, Inc.

Again, welcome to G.D. Leasing.

Very truly yours,

Jeff Bland

Personnel manager

Acknowledged received:

A.J. Owens' signature

stated that he received his various assignments from his dispatcher in West Mifflin and drove to various states, including Virginia, North and South Carolina, Michigan, New York and Connecticut, but that he spent most of his time working in West Mifflin. He indicated, though, that his paychecks came from Employer's Indiana office.

Employer provided the deposition testimony of Mark Halsey (Halsey), who ran the training and orientation program and was responsible for recruitment and hiring. He stated that Employer was a subsidiary of Compass Enterprises, the parent company, and employees of Employer were then leased to other carriers, including Compass Transportation. Halsey stated that Claimant was paid by Employer and not by Compass, as Employer hired, paid and was responsible for Claimant's benefits and equipment. Halsey also stated that Claimant was given a document to sign at the beginning of the orientation indicating that he would become an employee of Employer if he successfully completed the orientation program, and when Claimant did complete the program successfully, he was hired in Indiana as an over-the-road truck driver and filled out all of the remaining personnel papers in Indiana. Halsey presented pie charts breaking down the amount of time a driver spent on the road that were labeled "series by day" and the number of loads that were picked up and delivered labeled "series by load" and stated that based on the "series by day" figures, Claimant spent approximately 76% of his driving time outside the State of Pennsylvania.[2]

The WCJ noted that because Claimant had entered into an employment contract in the State of Indiana, he could only seek benefits under the Pennsylvania Workers' Compensation Act (Act)[3] if he established that his employment was principally located in Pennsylvania. While finding that Claimant's employment was principally localized in Pennsylvania, because Employer had a place of business in Pennsylvania that Claimant regularly worked from or at and Employer's pie chart figures based on "series by load" indicated that a substantial amount of Claimant's loads originated from the West Mifflin terminal, the WCJ, nonetheless, dismissed Claimant's petitions because he had signed a contract of hire with Employer agreeing that his exclusive remedy for workers' compensation was in the State of Indiana, and the Act recognized such agreements unless the other state refused jurisdiction. In doing so, the WCJ relied on Section 305.2(d)(5) of the Act, 77 P.S. § 411.2(d)(5).[4] Claimant ap-

---

**2.** The "series by day" pie chart indicated that 24% of the total number of days that Claimant worked were spent picking up loads in Pennsylvania and delivering loads within Pennsylvania; 13% were spent picking up loads in Pennsylvania and delivering loads outside of Pennsylvania; 30% were spent picking up loads outside of Pennsylvania and delivering loads back to Pennsylvania; and 33% were spent picking up loads outside of Pennsylvania and delivering loads outside of Pennsylvania. The "series by load" pie chart indicated that 33% of all of Claimant's loads were picked up within Pennsylvania and delivered within Pennsylvania; 10% were picked up within Pennsylvania and delivered outside of Pennsylvania; 26% were picked up outside of Pennsylvania and delivered inside of Pennsylvania; and 31% were picked up outside of Pennsylvania and delivered outside of Pennsylvania.

**3.** Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4.

**4.** The WCJ also dismissed the joinder petition concluding that Claimant had not established that he was an employee of Compass Transportation.

pealed to the Board which affirmed the WCJ's decision and this appeal followed.[5]

Section 305.2(a)(1) of the Act, 77 P.S. § 411.2(a)(1), provides that a claimant injured outside the territorial limits of Pennsylvania may receive benefits under the Act if his employment is principally localized in this state. A claimant's employment is principally localized in this or any other state if:

(i) *his employer has a place of business in this or such other state and he regularly works at or from such place of business,* or (ii) having worked at or from such place of business, his duties have required him to go outside of the State not over one year, or (iii) if clauses (1) and (2) foregoing are not applicable, he is domiciled and spends a substantial part of his working time in the service of his employer in this or such other state. (Emphasis added.)

Section 305.2(d)(4) of the Act, 77 P.S. § 411.2(d)(4). However, Section 305.2(d)(5) of the Act provides that if an employee travels regularly to other states, the parties can designate by agreement where the employee's employment is principally localized stating:

An employe whose duties require him to travel regularly in the service of his employer in this and one or more other states may, by written agreement with his employer, provide that his employment is principally localized in this or another such state, and unless such other state refuses jurisdiction, such agreement shall be given effect under this Act.

77 P.S. § 411.2(d)(5).

■ Because he never signed an agreement that localized his employment in Indiana, Claimant contends that the WCJ erred in relying on this section in deciding that Pennsylvania does not have jurisdiction over his claim because Section 305.2(d)(5) only applies to circumstances where the agreement for hire states that employment is to be principally localized in a specific state. He relies on *Rock v. Workmen's Compensation Appeal Board (Youngstown Cartage Company)*, 92 Pa. Cmwlth.491, 500 A.2d 183 (1985), where the claimant truck driver was a resident of Pennsylvania who was hired by an Ohio company. The claimant signed an employment agreement stating that Ohio's workmen's compensation laws were to be the exclusive remedy if he was injured, but, as here, never agreed that his employment was localized in Ohio. After the claimant was injured, he applied for and received workmen's compensation benefits from the state of Ohio. He subsequently filed a claim petition for benefits in Pennsylvania. Both the WCJ and Board dismissed the claim petition on the basis of Section 305.2(d)(5) of the Act because the claimant had agreed to be bound by Ohio's laws and Ohio had not refused jurisdiction. On appeal to this Court, we reversed stating:

In this appeal, claimant argues that Section 305.2(d)(5) of the Act authorizes agreements only as to where employment is to be principally localized and not as to which states' workmen's compensation laws are to be the employee's exclusive remedy. *We agree that Section 305.2(d)(5) of the Act applies only in circumstances where the agreement states that employment is to be principally localized in a specific state. The focus of Section 305.2(d)(5) is on the*

**5.** Our scope of review of the Board's determination is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Murphy v. Workers' Compensation Appeal Board (Mercy Catholic Medical Center)*, 721 A.2d 1167 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 560 Pa. 691, 742 A.2d 678 (1999).

employee's employment and not on the employer. Interstate Carriers Cooperative v. Workmen's Compensation Appeal Board, *66 Pa.Commonwealth Ct. 288, 443 A.2d 1376 (1982). (Emphasis added.)*

*Id.* at 185. Because Claimant, in this case, did not sign an agreement localizing his employment in Indiana, Section 305.2(d)(5) has no application.

█ Because there is no dispute that Claimant's employment was principally located in Pennsylvania, the Board erred in dismissing his claim and reinstatement petitions based on Section 305.2(d)(5) of the Act. Accordingly, Claimant is not precluded from receiving workers' compensation benefits in Pennsylvania, and the case is remanded to the Board to remand to the WCJ for further hearings on Claimant's claim and reinstatement petitions. Jurisdiction is relinquished.

Judge LEADBETTER concurs in the result only.

### ORDER

AND NOW, this *31st* day of *January,* 2001, the order of the Workers' Compensation Appeal Board, dated September 12, 2000, No. A99–2723, is reversed. The case is remanded to the Board to remand to the Workers' Compensation Judge to hold hearings on Al J. Owens' claim and reinstatement petitions. Jurisdiction is relinquished.

AND NOW, this *10th* day of *April,* 2001, the opinion filed January 31, 2001 in the above-captioned matter shall be designated Opinion rather than Memorandum Opinion, and it shall be reported.