810 A.2d 1280

McILVAINE TRUCKING, INC.

v.

WORKERS' COMPENSATION APPEAL BOARD (STATES).

Appeal of Robert E. States.

Robert E. States, Appellant

v.

Workers' Compensation Appeal Board (McIlvaine Trucking, Inc.), Appellees.

Supreme Court of Pennsylvania.

Argued Sept. 10, 2001.

Decided Nov. 25, 2002.

Vincent J. Quatrini, Greensburg, for appellant, Robert E. States.

Lawrence R. Chaban, Washington, for appellant amicus curiae, Pa. Trial Lawyers Ass'n.

Amber Marie Kenger, Mechanicsburg, James A. Holzman, Harrisburg, for appellee, W.C.A.B.

James Clark Munro, Johnstown, for appellee, McIlvaine Trucking Co.

William E. Doyle, Allentown, Robert Diggs, Jr., Alexandria, VA, for appellee amici curiae, American Trucking Ass'n and Pa. Motor Truck Ass'n.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

Justice SAYLOR.

The question presented concerns whether an employment agreement purporting to vest exclusive jurisdiction over work-related injuries within a foreign state's workers' compensation system may be enforced, consistent with the Pennsylvania Workers' Compensation Act, where the injury at issue occurred within this Commonwealth.

Appellant Robert E. States ("Claimant") was employed as an interstate truck driver by Appellee McIlvaine Trucking, Inc. ("Employer"), a liquid bulk carrier headquartered in Ohio and operating primarily there, in Pennsylvania, Virginia, and West Virginia. At hire (and apparently as a condition of his employment), Claimant signed an agreement to be bound by the workers' compensation laws of West Virginia should he

suffer work-related injury.[1] In June of 1992, Claimant did sustain injury to his leg and lower back while performing his duties at Employer's facility located in New Stanton, Pennsylvania, initially resulting in a five-day absence from work, for which he applied for and received benefits under the West Virginia workers' compensation act. Claimant's symptoms later recurred following a period of furlough, and he was diagnosed with a disabling back injury in the late spring of 1994. Subsequently, Claimant filed a claim petition under the Pennsylvania Workers' Compensation Act,[2] as well as a penalty petition. In response, although acknowledging the fact of the work injury, Employer asserted that the WCJ lacked jurisdiction to adjudicate the petition in light of Claimant's consent to be bound by the laws of West Virginia. Although Employer acknowledged the Act's general applicability to in-state injuries, it argued that in Section 305.2(d)(5) of the Act the Legislature authorized agreements altering such effect by providing that:

> [a]n employe whose duties require him to travel regularly in the service of his employer in this and one or more other states may, by written agreement with his employer, provide that his employment is principally localized in this or another such state, and, unless such other state refuses jurisdiction, such agreement shall be given effect under this act.

77 P.S. § 411.2(d)(5). Employer also contested Claimant's averments concerning the duration of his injury and liability on the penalty petition.

After a hearing, the workers' compensation judge (the "WCJ") issued findings of fact and conclusions of law determining, *inter alia*, that, because Claimant's injury occurred in

---

1. Specifically, the agreement provided:

I(We), the undersigned employees of the above employer, a subscriber to the West Virginia Workers' Compensation Fund, do hereby agree to be bound by the Workers' Compensation Act and the Laws of the State of West Virginia while working in the State(s) of continental U.S. as well as the State of West Virginia.

2. Act of June 2, 1915, P.L. 736 (as amended 77 P.S. §§ 1–1041.4, 2501–2626)(the "Act").

Pennsylvania, he was entitled to compensation under the Act notwithstanding the contrary term of the employment agreement. In this regard, the WCJ cited the Act's general prescription for its own applicability "to all injuries occurring within this Commonwealth." 77 P.S. § 1. The WCJ rejected Employer's argument that Section 305.2(d)(5) affords parties the opportunity to bargain concerning the applicability of the Act to in-state injuries, concluding that such provision pertained solely to injuries occurring outside Pennsylvania.[3] On consideration of cross-appeals from portions of the WCJ's determination adverse to the parties' respective positions, the Workers' Compensation Appeal Board (the "Board") affirmed. Concerning the jurisdictional question, the Board also reasoned that:

> the evidence clearly establishes that the work injury occurred at [Employer's] New Stanton, Pennsylvania facility. . . . Under Section 305.2(d)(5) the employer and the employee may agree that an employer's business is principally localized in another state *but they may not agree to confer jurisdiction outside of Pennsylvania where jurisdiction would otherwise lie in Pennsylvania.* Therefore, the [WCJ] did not err by finding that Pennsylvania had jurisdiction.

(emphasis added)(citing *Robert M. Neff, Inc. v. WCAB (Burr),* 155 Pa.Cmwlth. 44, 624 A.2d 727 (1993)).

On further appeal, however, the Commonwealth Court reversed. Unlike the WCJ and the Board, the court agreed with Employer's contention that Section 305.2(d)(5) sanctions employment agreements designating the workers' compensation law to be applied to job-related injuries incurred by certain traveling employees, regardless of the location of the injury. Specifically, the court stated:

> Where the job duties require claimant to travel regularly outside the state, the written employment contract may

**3.** On the duration question, the WCJ accepted portions of the evidence offered by both parties, ultimately imposing liability upon Employer for two closed periods of disability, subject to a credit for compensation paid under the West Virginia Act. *See* 77 P.S. § 411.2(b). The WCJ also denied Claimant's penalty petition.

provide where the employment is principally localized and the written employment contract determines which state is vested with jurisdiction to hear the workers' compensation claim. Here the written employment contract declares that workers' compensation claims shall be submitted to the state of West Virginia. The claim was submitted to and accepted by the State of West Virginia. We therefore conclude that effect must be given to the agreement; claimant is not entitled to benefits under the Act.

*McIlvaine Trucking, Inc. v. WCAB (States)*, No. 2420 CD 1999, *slip op.* at 4 (Pa.Cmwlth.Mar.20, 2000). Although its decision was opposite that of the Board, the Commonwealth Court also cited its *Robert M. Neff* decision, as well as *Creel v. WCAB (Overland Express, Inc.)*, 164 Pa.Cmwlth. 508, 643 A.2d 784 (1994).

■ We allowed appeal primarily to consider whether the provisions of the Act pertaining to extraterritorial jurisdiction also may be invoked to foreclose invocation of the Act's remedial provisions in favor of a worker injured in the Commonwealth. We also consider, more generally, whether the WCJ and the Board were correct in invoking the policy of the Act to negate the effect of the parties' choice-of-law agreement.

Presently, Claimant advances the position taken by the WCJ and the Board to the effect that Section 305.2(a) of the Act was designed to extend the Act's protections to injuries occurring outside the Commonwealth. According to Claimant, Section 305.2 in no way sanctions an agreement to avoid Pennsylvania jurisdiction over an in-state injury. Further, Claimant maintains that any such agreement is void as in violation of the Act's overriding policy to afford compensation for in-state, work-related injuries. In support of Claimant's position, *amicus curiae*, the Pennsylvania Trial Lawyers Association, criticizes the Commonwealth Court's reliance upon *Robert M. Neff*, since the decision approves the assertion of Pennsylvania jurisdiction over an in-state injury, as well as *Creel*, since it concerned an extraterritorial injury and thus, unlike the present case, represented an appropriate setting for

application for Section 305.2. Employer, on the other hand, maintains that Section 305.2(d)(5) authorizes choice-of-law agreements in the workers' compensation setting governing the conferral of benefits for both in- and out-of-state injuries. Employer asserts that the underlying policy of Section 305.2 is to foster broad predictability in the workers' compensation process by allowing parties by agreement to ameliorate the administrative burden and uncertainty involved in compliance with the many, and sometimes conflicting, state workers' compensation systems in force nationwide. *Amici curiae,* American Trucking Association, Inc. and Pennsylvania Motor Truck Association, elaborate upon such burdens and cite to decisions from other jurisdictions which they contend adopt Employer's proffered construction of provisions substantially similar to Section 302.5(d)(5). *See, e.g., Cawyer v. Continental Express Trucking,* 122 N.M. 819, 932 P.2d 509 (Ct.App.1996).

As Claimant emphasizes, and as is reflected in Section 101 of the Act, the General Assembly explicitly designed the Act to apply to injuries occurring within this Commonwealth. *See* 77 P.S. § 1. Indeed, at the time of its enactment, Section 101, by its terms, restricted the Act's coverage to in-state injuries. *See* 77 P.S. § 1 (superseded) (providing, *inter alia,* that the Act "shall not apply to any accident occurring outside of the Commonwealth"). From time to time, however, the Act was amended to confer extraterritorial jurisdiction in certain circumstances. Principally, in 1974, the Legislature extended jurisdiction "extraterritorially as provided by section 305.2," 77 P.S. § 1, and, correspondingly, added Section 305.2, 77 P.S. § 411.2.[4] The jurisdictional component of Section 305.2 establishes, *inter alia,* that a claimant injured while working *outside of Pennsylvania* may be covered by the Act if his or her employment was "principally localized" in Pennsylvania. 77 P.S. § 411.2(a)(1).[5] *See generally Goldberg v. WCAB (Star*

4. *See* Act of Dec. 5, 1974, P.L. 782, No. 263.

5. Specifically, Section 305.2(a) of the Act indicates:
 (a) If an employe, while working outside the territorial limits of this State, suffers an injury on account of which he, or in the event of his death, his dependents, would have been entitled to the benefits provided by this act had such injury occurred within this State, such

*Enterprises)*, 696 A.2d 263, 265 (Pa.Cmwlth.1997). For such purpose, Section 305.2 defines the phrase "principally localized" as follows:

(d) As used in this section:

(4) A person's employment is principally localized in this or another state when (i) his employer has a place of business in this or such other state and he regularly works at or from such place of business, or (ii) having worked at or from such place of business, his duties have required him to go outside of the State not over one year, or (iii) if clauses (1) and (2) foregoing are not applicable, he is domiciled and spends a substantial part of his working time in the service of his employer in this or such other state.

77 P.S. § 411.2(d)(4). This definitional language is supplemented by the provision invoked by Employer, Section 305.2(d)(5), sanctioning agreements designating the principal localization of employment under certain circumstances. *See* 77 P.S. § 411.2(d)(5) (quoted *supra*).

In previous decisions, the Commonwealth Court has treated Section 101's conferral of jurisdiction over in-state injuries as separate and distinct from the extraterritorial jurisdiction delineated in Section 305.2(a). *See, e.g., Martin v. WCAB (United States Steel Corp.)*, 132 Pa.Cmwlth. 370, 375–76, 572 A.2d 1307, 1310 (1990). It is not surprising, therefore, that the body of Commonwealth Court jurisprudence regarding Section 305.2(a) concerns its operation as a mechanism effectuating the conferral of jurisdiction over out-of-state injuries. *See generally Furnco Constr. Corp. v. WCAB (Dorogy)*, 124 Pa.Cmwlth. 17, 22, 555 A.2d 275, 278 (1989) (describing the

employe, or in the event of his death resulting from such injury, his dependents, shall be entitled to the benefits provided by this act, provided that at the time of such injury:

(1) His employment is principally localized in this State. . . .

Additionally, jurisdiction is conferred with respect to an extraterritorial injury where the employee is working under an employment agreement made in Pennsylvania: 1) in employment not principally localized in any state, *see* 77 P.S. § 411.2(a)(2); 2) in employment principally localized in another state whose workers' compensation law is not applicable to the employer, *see* 77 P.S. § 411.2(a)(3); or 3) in employment outside the United States or Canada, *see* 77 P.S. § 411.2(a)(4).

purpose of Section 305.2(a) as "permitting compensation for extraterritorial employment").[6] Indeed, the Commonwealth Court previously has criticized the Board for "ignor[ing] the General Assembly's expressed intent that Section 305.2[(a)] is limited to situations involving extraterritorial injuries." *Martin*, 132 Pa.Cmwlth. at 375, 572 A.2d at 1310; *cf. Blunt Limited v. WCAB (Riley)*, 654 A.2d 253, 256 (Pa.Cmwlth.1995)(stating that "the only relevant factor for the Act to be applicable is whether the injury occurred within this jurisdiction"). Further, a natural interpretation of Section 305.2(d)(4) and (d)(5) merely elaborates upon the concept of principal localization as employed in Section 305.2(a)'s treatment of extraterritorial jurisdiction but does not independently extend the authority to private parties to alter the applicability of the Act to in-state injuries. *Accord L.R. Willson & Sons, Inc. v. PMA Group*, 867 F.Supp. 335, 338 (D.Md.1994)(concluding that Section 305.2(d)(5) "functions only with respect to work performed and injuries which occur *outside* of Pennsylvania, not within Pennsylvania" (emphasis in original)).[7] Such interpretation is also reflected in the

6. *See also Meyer v. WCAB (Raytheon Co.)*, 776 A.2d 338 (Pa.Cmwlth. 2001); *Owens v. WCAB (G.D.Leasing)*, 769 A.2d 1220 (Pa.Cmwlth. 2001); *Lambie v. WCAB (Curry Lumber Co.)*, 736 A.2d 67 (Pa.Cmwlth. 1999); *Goldberg*, 696 A.2d at 263; *Atkins v. WCAB (Geo–Con, Inc.)*, 651 A.2d 694 (Pa.Cmwlth.1994); *Creel*, 164 Pa.Cmwlth. at 508, 643 A.2d at 784; *Root v. WCAB (U.S. Plywood Corp.)*, 161 Pa.Cmwlth. 291, 636 A.2d 1263 (1994); *Hiller v. WCAB (Deberardinis)*, 131 Pa.Cmwlth. 189, 569 A.2d 1024 (1990); *Pfizer, Inc. v. WCAB (Gresham)*, 130 Pa.Cmwlth. 319, 568 A.2d 286 (1989); *Rock v. WCAB (Youngstown Cartage Co.)*, 92 Pa.Cmwlth. 491, 500 A.2d 183 (1985); *cf. Robert M. Neff*, 155 Pa. Cmwlth. at 51, 624 A.2d at 731–32 (holding that Section 305.2(b) does not permit agreements vesting exclusive jurisdiction over workers' compensation claims in another state).

7. In addressing arguments similar to those presented here, the *L.R. Willson* court described the operation of Section 305.2(d)(5) as:

permit[ting] employers and employees to determine, prior to any injury occurring, where a principal location of employment is in order that in the event of an out-of-state injury, an employee may or may not be covered by Pennsylvania law. For example, if an employee signed the agreement in question, worked temporarily in Pennsylvania, and was subsequently injured in Maryland, the agreement that employment was localized principally in Maryland would negative coverage under Pennsylvania statutory law for an extraterritorial injury. *However, no such agreement is effective to diminish the*

commentary to the model workmen's compensation law, from which Section 305.2 was drawn.[8]

Notably, the recitation of the applicable statutory provisions in the dissenting opinion tracks our own—the dissent acknowledges the Act's general applicability to "all injuries occurring within this Commonwealth," *see* Dissenting Opinion, at 1288 n. 1; the function of Section 305.2(a) to extend jurisdiction extraterritorially, via, *inter alia*, the concept of principal localization, *see id.* at 1288; and the definitional character of Section 305.2(d)(4) and (d)(5) in relation to principal localization, *see id.* at 1288–89. The dissent nonetheless posits that Section 305.2(d)(5) should also be deemed to serve the broader function of authorizing employers and employees by agreement to divest Pennsylvania of jurisdiction over in-state injuries. Section 305.2(d)(5), however, by its terms does not

> applicability of *Pennsylvania statutory law when the work and injury take place in Pennsylvania itself.*
>
> *L.R. Willson*, 867 F.Supp. at 338–39 (emphasis added). *L.R. Willson's* interpretation comports with our own; further, we note that the decisions from other jurisdictions cited by Employer and its *amici* concerned the application of analogues to Section 305.2(d)(5) to extraterritorial rather than in-state injuries. *See, e.g., Cawyer*, 932 P.2d at 509. We do acknowledge the conflict between the Commonwealth Court's determination that an agreement framed in terms of choice of law as opposed to principal localization is ineffective for purposes of Section 305.2(d)(5) as applied in the circumstance of an out-of-state injury, *see Owens*, 769 A.2d at 1222; *Rock*, 92 Pa.Cmwlth. at 495–96, 500 A.2d at 185, and the contrary view which prevails in some other jurisdictions. *See Cawyer*, 932 P.2d at 509; *Heater v. Tri-State Motor Transit Co.*, 644 So.2d 25, 26–27 (Ala.Civ.App.1994). Resolution of such conflict is not appropriate here, since the present case concerns an in-state injury; thus, *Owens* and *Rock* remain prevailing precedent in this Commonwealth at least until such time as the matter is brought and accepted for review by this Court.

**8.** The model law commentary proceeds as follows:

> [T]he agreement [under the model law equivalent to Section 305.2(d)(5)] only acts upon the issue whether the employment is "principally localized" in a particular state. It therefore would act only upon the first two of the four tests *for out-of-state coverage* [, i.e., the model law equivalent to Section 305.2(a)(1) and (2)].
>
> Council of State Governments, Workmen's Compensation and Rehabilitation Law 100 (1973)(emphasis added). This is obviously the case since it is solely within the context of such provisions (Sections 305.2(a)(1) and (2)) that the concept of principal localization is controlling.

cognize such a choice-of-law provision; rather, as noted, the statute merely permits contractual designation of principal localization, which is employed solely in the context of the Act's extraterritorial provisions. The dissent's policy-based analysis therefore departs from the operative statutory provisions, which reflect competing policies underlying the legislative choices embodied in the Act.

In accordance with the express provisions of the Act and the Commonwealth Court's principal line of decisions in this area, we hold that Section 305.2(d)(5) does not permit parties by agreement to overcome the Act's coverage pertaining to a subsequent, in-state injury.

 It remains to address the viability of the parties' choice-of-law agreement exclusive of Section 305.2. In this regard, it should be emphasized that courts do not lightly override private contractual undertakings. Nevertheless, agreements may be avoided where, as here, their terms offend public policy as reflected, *inter alia*, in express legislative provisions such as Section 101's directive that the Act applies to in-state injuries.[9] This is particularly appropriate in the workers' compensation arena where, in Section 410 of the Act, the Legislature has explicitly directed that agreements made prior to the seventh day after an injury that would vary the amount of compensation to be paid under the Act are not to be enforced. *See* 77 P.S. § 731; *cf.* 77 P.S. § 71 (establishing a similar proscription with regard to actions for damages). *See generally Robert M. Neff,* 155 Pa.Cmwlth. at 53, 624 A.2d at 732 (explaining that "[t]o hold otherwise would permit employers to require applicants and employees to waive statutory

**9.** *See generally McLaughlin v. Gastrointestinal Specialists, Inc.,* 561 Pa. 307, 315–16, 750 A.2d 283, 288 (2000) (explaining that "we declare the public policy of this Commonwealth by ... looking to our own Constitution, court decisions and statutes promulgated by our legislature"); *Bell v. McAnulty,* 349 Pa. 384, 386, 37 A.2d 543, 544 (1944) ("Where the legislature has, by definite and unequivocal language, determined the public policy of this Commonwealth with regard to a particular subject, that pronouncement cannot be set aside and rendered unenforceable by a contract between individuals").

rights to obtain benefits under the Act, which is clearly contrary to the clear language of Section 410").[10] Thus, in absence of an express and pertinent statutory exception, the WCJ and the Board did not err in refusing to give effect to the parties' choice-of-law agreement.

Finally, we acknowledge the policy-based arguments offered by Employer and its *amici* concerning the burden of navigating multiple workers' compensation schemes—indeed, we note that at least two state workers' compensation schemes would appear to permit an employer and employee to select another state's law as the employee's exclusive remedy irrespective of the place of injury.[11] In such instances, however, the paradigm was effectuated by express legislative prescription. In view of the above, Employer's policy arguments are more appropriately addressed to the General Assembly.

10. As explained by one commentator:

> [e]xpress agreement between employer and employee that the statute of a named state shall apply is ineffective either to enlarge the applicability of that state's statute or to diminish the applicability of the statutes of other states. Whatever the rule may be as to questions involving commercial paper, interest, usury and the like, the rule in workmen's compensation is dictated by the overriding consideration that compensation is not a private matter to be arranged between two parties; the public has a profound interest in the matter which cannot be altered by any individual agreements.

4 Arthur Larson, The Law of Workmen's Compensation 87.71 (1994), *quoted in L.R. Willson*, 867 F.Supp. at 338.

11. *See* Ohio Rev Code Ann § 4123.54 (providing that, to avoid conflict of laws, when "the contract of employment is entered into and all or some portion of the work is or is to be performed in a state or states other than Ohio, the employer and the employee may agree to be bound by the laws of ... some other state in which some portion of the work of the employee is to be performed," in which case "the rights of the employee ... under the laws of that state are the exclusive remedy ... *without regard to the place where the injury was sustained*" (emphasis added)); W. Va Code § 23–2–1c(a) (designating, in a manner similar to the Ohio Code, the law of the state chosen as the exclusive remedy "without regard to the situs of the injury"). Notably, such statutes impose greater constraints than would the dissent's interpretation of Pennsylvania's scheme. For example, the Ohio statute is inapplicable on its face to in-state employment contracts, *see* Ohio Rev Code Ann. § 4123.54, and, under the West Virginia statute, the regulators maintain the ability to review and reject consensual choice-of-law provisions. *See* W. Va Code § 23–2–1c(a).

The decision of the Commonwealth Court is reversed, and the matter is remanded for further proceedings consistent with this opinion.

Former Chief Justice FLAHERTY did not participate in the decision of this case.

Chief Justice ZAPPALA files a dissenting opinion in which Justice CASTILLE joins.

Chief Justice ZAPPALA dissenting.

I dissent and would affirm the order of the Commonwealth Court. The majority restores the uncertainty over the jurisdiction of workers' compensation claims that the Legislature sought to eliminate. The enforceability of the parties' written agreement now depends upon the fortuitous circumstance of where an injury occurs, rather than the specific designation made by the parties themselves. The majority disrupts the legislative scheme by replacing a definite election regarding which state's law will apply with an indefinite, unforeseeable factor—where the injury occurs.

Furthermore, the majority's holding would lead to the conclusion that a Pennsylvania resident who is injured in Pennsylvania may disregard a written agreement designating another state as where his employment is principally localized, while a Pennsylvania resident who is injured outside of Pennsylvania is bound by the written agreement.

Under § 305.2(d)(5) of the Workers' Compensation Act, 77 P.S. § 411.2(d)(5), an employee may enter into a written agreement establishing where the employee's employment is principally localized when an employee's duties require him to travel regularly in Pennsylvania and one or more other states. The fact that a claimant's injury occurred in Pennsylvania does not act to void a valid and enforceable agreement authorized under § 305.2(d)(5).

Section 305(d)(5) provides that

An employee whose duties require him to travel regularly in the service of his employer in this and one or more other

states may, by written agreement with his employer, provide that his employment is principally localized in this or another state, and, *unless such other state refuses jurisdiction, such agreement shall be given effect under this act.* 77 P.S. § 411.2(d)(5) (emphasis added).

The Legislature's purpose in enacting § 305(d)(5) was to allow employers and employees to enter into written agreements that would govern which state's workers' compensation laws would apply when an employee whose employment was not principally localized in one state was injured. The provision was adopted to eliminate the uncertainty as to which state's workers' compensation law would apply under that circumstance. By refusing to enforce the written agreement executed by Claimant in this case, the majority has undermined the statutory scheme that the Legislature established for those employed in businesses that require regular travel in Pennsylvania and one or more other states.

A claimant may be eligible for benefits under Pennsylvania's Workers' Compensation Act when the injury occurs within Pennsylvania.[1] The Act also establishes jurisdiction over claims for injuries occurring outside of Pennsylvania in certain circumstances. When the injury occurs outside of the territorial limits of Pennsylvania, a claimant may be entitled to seek benefits under § 305.2(a) of the Act, which provides:

(a) If an employe, while working outside of the territorial limits of this State, suffers an injury on account of which he, ... would have been entitled to the benefits provided by this act had such injury occurred within this State, such employe ... shall be entitled to the benefits provided by this act, provided that at the time of such injury:

(1) His employment is principally localized in this State, or

(2) He is working under a contract of hire made in this State in employment not principally localized in any state, or

---

1. The Workers' Compensation Act "shall apply to all injuries occurring within this Commonwealth, irrespective of the place where the contract of hiring was made, renewed, or extended, and extraterritorially as provided by section 305.2." 77 P.S. § 1.

(3) He is working under a contract of hire made in this State in employment principally localized in another state whose workmen's compensation law is not applicable to his employer, or

(4) He is working under a contract for hire made in this State for employment outside the United States and Canada.

77 P.S. § 411.2(a).

Under § 305.2(a) of the Act, an employee is entitled to benefits when injured as the result of employment that is principally localized within Pennsylvania or employment arising under a contract for hire executed in Pennsylvania. The Act defines when a person's employment is principally localized in this or another state as follows:

[W]hen (i) his employer has a place of business in this or such other state and he regularly works at or from such place of business, or (ii) having worked at or from such place of business, his duties have required him to go outside of the State not over one year, or (iii) if clauses (1) or (2) foregoing are not applicable, he is domiciled and spends a substantial part of his working time in the service of his employer in this or such other state.

77 P.S. § 411.2(d)(4). In addition, however, an employee, whose employment is not principally localized in this or another state, may enter into a written agreement designating where his employment is principally localized when he is required to travel regularly in this and one or more other states. 77 P.S. § 411.2(d)(5).

In this case, Claimant's employment required him to travel regularly to various states bordering, and including, Pennsylvania. Claimant entered into an agreement with his Employer under which he agreed to be bound by the workers' compensation laws of the State of West Virginia if he sustained a work-related injury in any state in which he traveled. The written agreement executed by McIlvaine Trucking, Inc., and Claimant is specifically contemplated by, and enforceable, under § 305(d)(5) of the Act.

Claimant was hired by McIlvaine Trucking at its principal office in Wooster, Ohio and began working as a truck driver in October of 1991. WCJ's Findings of Fact Nos. 6 and 8, subsec. 1. When he was hired, Claimant entered into a written agreement that any work-related injury that he suffered would be covered by the workers' compensation law of the State of West Virginia. WCJ's Findings of Fact No. 8, subsec. 3. Claimant worked from a terminal in Pennsylvania, but his work was not principally localized in Pennsylvania or any other state. Claimant drove to various states bordering Pennsylvania and, on occasion, drove beyond the Mississippi River. *Id.*

On June 25, 1992, Claimant sustained a lower back injury while at the terminal in Pennsylvania. McIlvaine Trucking accepted the injury as covered under West Virginia workers' compensation law. Claimant received disability and medical benefits under the West Virginia law.

On May 24, 1995, Claimant filed a claim petition seeking benefits under Pennsylvania's Workers' Compensation Act. He alleged that he had become fully disabled on June 25, 1992. McIlvaine Trucking admitted that Claimant had been injured, but challenged the length of the resulting disability. McIlvaine Trucking also sought to enforce the written agreement that any work-related injury would be covered under West Virginia law. On September 18, 1995, Claimant filed a penalty petition arising out of the refusal to accept his injury as covered by Pennsylvania's act.

The WCJ refused to enforce Claimant's written agreement to be bound by the workers' compensation laws of the State of West Virginia. The WCJ determined that Claimant's injury was covered by Pennsylvania's Workers' Compensation Act because the injury occurred within Pennsylvania and that Section 305.2 of the Act did not apply to such injury. Total disability benefits were awarded for the periods from June 25, 1992 through June 29, 1992, and from June 22, 1994 through November 13, 1995. McIlvaine Trucking was given credit for benefits that had been previously paid to Claimant under the workers' compensation law of West Virginia.

The Workers' Compensation Appeal Board affirmed the WCJ's decision. On appeal, the Commonwealth Court reversed. The court concluded that the written agreement signed by Claimant was to be given effect because the workers' compensation claim had been submitted and accepted by the State of West Virginia in accordance with the provisions of § 305(d)(5).

The language of § 305(d)(5) evinces the Legislature's intent to allow an employee and employer to confer jurisdiction of the workers' compensation laws of a particular state when the employee regularly travels in more than one state. The Legislature provided for two protections in allowing the designation to be made: first, the agreement designating the state in which the employee's employment is principally localized must be in writing; and second, the agreement is to be given effect under the Act unless the designated state refuses jurisdiction. Notably, § 305(d)(5) provides that such an agreement "shall be given effect *under this act*" when those conditions are satisfied. Section 305(d)(5) is not limited by its terms to injuries occurring extraterritorially, under only that specific provision of the act. To the contrary, the language of § 305(d)(5) clearly requires the agreement to be given effect under the entire act. This extends to those injuries that are sustained within Pennsylvania.

To hold otherwise defeats the Legislature's intent. Section 302(d)(5) was designed to eliminate the uncertainty as to which state's workers' compensation law would apply when an employee's regular travel within different states would give rise to the possibility that jurisdiction would lie in any of those states. In authorizing the employee to enter into a written agreement, the Legislature created a mechanism whereby an employer could determine where it would be responsible for maintaining workers' compensation insurance. The written agreement would eliminate the uncertainty facing an employer whose employees travel in several states.

In their brief, the American Trucking Association and the Pennsylvania Motor Truck Association addressed the myriad

of additional problems that are engendered by the majority's decision:

> Employers subject to many, different state workers' compensation schemes face significant problems. When a claim can potentially be filed in any state in the country, a motor carrier employer must become expert on up to 50 state workers' compensation systems, and establish an infrastructure of health care providers and legal counsel in every state. This cumulative burden results in significantly increased administrative expenses to manage claims in many different states, loss of economies of scale that could result from dealing in only one or a limited number of forums, and difficulties in assembling a cadre of health care personnel to provide the medical care and rehabilitative services associated with workers' compensation programs. Motor carriers must also waste resources on developing a network of legal counsel in multiple states to fight jurisdictional issues that need not arise. Finally, the unpredictability of where a claim may be heard increases the carrier's workers' compensation insurance premiums or cost of self insurance.

Brief of Amici Curiae, American Trucking Association, Inc. and Pennsylvania Motor Truck Association at 5–6.

The majority's decision requires employers to obtain workers' compensation coverage in each and every state in which their employees travel. This unnecessary and expensive duplication of insurance coverage is the precise problem that the Legislature believed had been addressed and resolved by the adoption of Section 302(d)(5). The majority resurrects the problem today. For these reasons, I dissent.

Justice CASTILLE joins this dissenting opinion.